**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**RANDY M. FISHER**
Leonard Hammond Thomas & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PABLO GARCIA-GOMEZ, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1206-CR-290 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D06-1202-FB-26

**January 16, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Pablo Garcia-Gomez appeals his three-year sentence for Class D felony domestic battery. We affirm.

## Issues

Garcia-Gomez raises two issues, which we restate as:

I.  whether the trial court abused its discretion in sentencing him; and

II. whether his sentence is inappropriate.

## Facts

On February 7, 2012, Garcia-Gomez went to the home of P.H., with whom he had a three-week-old son. P.H. unsuccessfully tried to prevent Garcia-Gomez from entering the home, and when he got inside, he slapped a bowl out her hands, causing it to shatter, took her cell phone, and punched her in the back of the head. When P.H. ran upstairs, Garcia-Gomez grabbed her by the back of the head and pulled her down the stairs. The two struggled until P.H. went to console the crying infant. Garcia-Gomez followed P.H. and continued to physically batter her by punching her in the head several times. P.H.'s three other children were also home during the incident.

On February 13, 2012, the State charged Garcia-Gomez with Class B felony rape, Class B felony criminal deviate conduct, Class D felony domestic battery, and Class A misdemeanor interference with the reporting of a crime. From jail, Garcia-Gomez called P.H. approximately thirty-five times and urged her not to come to court. A jury found Garcia-Gomez guilty of the Class D felony battery charge.

At the sentencing hearing, Garcia-Gomez argued that the trial court should consider as mitigating that a lengthy period of incarceration would be a hardship on his six children, that he has been employed, that he had a difficult childhood, and that an extended incarceration would be a hardship on taxpayers because of his pending deportation. The trial court rejected these proposed mitigators and found Garcia-Gomez's criminal history and failed attempts at rehabilitation to be aggravating. The trial court sentenced Garcia-Gomez to three years. He now appeals.

**Analysis**

*I. Abuse of Discretion*

Garcia-Gomez first argues the trial court abused its discretion when it sentenced him. We evaluate a sentence under the current "advisory" sentencing scheme pursuant to Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007), clarified on reh'g by Anglemyer v. State, 875 N.E.2d 218 (Ind. 2007). The trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." Anglemyer, 868 N.E.2d at 491. The reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. Id. "The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse." Id.

Garcia-Gomez claims that the trial court abused its discretion by failing to find any of his proposed mitigators as mitigating. According to Garcia-Gomez, all of the proposed mitigators were significant and clearly supported by the record, implying that the trial court failed to properly consider them.

3

In sentencing Garcia-Gomez, the trial court acknowledged several of the proposed mitigators and explained why it did not find them persuasive. For example, the trial court remarked during the sentencing hearing that Garcia-Gomez had six children with four different women and had not been ordered to pay child support. The trial court also questioned Garcia-Gomez's ability to support the children given his sporadic employment. The trial court also rejected Garcia-Gomez's troubled childhood as a mitigator because it was unrelated to his conduct in this offense. These proposed mitigators were not overlooked by the trial court and, to the extent Garcia-Gomez is asking us to review the mitigating weight, or lack thereof, given to the proposed mitigators, such a claim is not available on appeal. See id.

As for the argument that the trial court failed to find that an extended period of incarceration would be a hardship on taxpayers as a mitigator, Garcia-Gomez has not established that the trial court overlooked a significant mitigator that was clearly supported by the record. See Anglemyer, 875 N.E.2d at 220-21 (opinion on reh'g) ("But an allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant."). We presume the legislature considered the cost of incarceration when it determined the sentencing ranges for each class of felony. Because the costs of incarceration generally are not reflective of the nature of this particular offense or of Garcia-Gomez's character, he has not shown that the trial court overlooked a significant mitigator. Garcia-Gomez has not established that the trial court abused its discretion in assessing his proposed mitigators.

4

## II. Inappropriateness

Garcia-Gomez also argues that his sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) permits us to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in

5

sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Regarding his character, Garcia-Gomez directs us to two letters showing his good character and suggests that the hardship on his six children, his employment, his difficult childhood, and the hardship on taxpayers warrant the reduction of his sentence. The record suggests that Garcia-Gomez's children all lived with their mothers, that he had not been ordered to pay child support, that he did not have a steady employment history, and that he was leaving to return to Mexico on the night he committed the offense. Neither his purported support of his children nor his claims of employment reflect positively on his character. Further, although the presentence investigation report ("PSI") suggests a difficult childhood, Garcia-Gomez points to no connection between his childhood and the commission of this offense. Finally, we are not convinced that the cost of incarceration is a relevant consideration when reviewing the appropriateness of a sentence.

Moreover, Garcia-Gomez's criminal history reflects poorly on his character. His criminal history includes misdemeanor convictions for battery, three counts of disorderly conduct, two counts of invasion of privacy, and illegal entry. It also includes other arrests, the failure to appear for a court date in another state, and seven pending felony charges. Garcia-Gomez has repeatedly shown a disregard for the law, and his character does not warrant a reduction of his sentence.

As for the nature of the offense, Garcia-Gomez suggests that P.H.'s refusal to participate in the trial, subjecting her to a ten-day jail sentence, her refusal to provide a victim impact statement, and her failure to testify at the sentence hearing "speak volumes

6

as to the nature of the offense." Appellant's Br. p. 14. We decline to speculate why P.H., a domestic violence victim, who was subjected to repeated requests not to testify by Garcia-Gomez from jail, refused to participate in these criminal proceedings, and we reject Garcia-Gomez's suggestion that her failure to participate somehow reduces the seriousness of the offense.

Garcia-Gomez went into P.H.'s house without permission, took her phone, and struck her repeatedly in the presence of their three-week-old son and her three other young children. Nothing about the nature of the offense suggests that the three-year sentence was inappropriate.

Garcia-Gomez also argues that his sentence is inappropriate because he is not the "worst of the worst" offenders. Although the maximum possible sentences are generally most appropriate for the worst offenders, this is not an invitation to determine whether a worse offender could be imagined, "as it is always possible to identify or hypothesize a significantly more despicable scenario, regardless of the nature of any particular offense and offender." Wells v. State, 904 N.E.2d 265, 274 (Ind. Ct. App. 2009) (citing Buchanan v. State, 767 N.E.2d 967, 973 (Ind. 2002)), trans. denied. "We concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character." Id. Thus, in light of the nature of the offense and Garcia-Gomez's character, we believe that the three-year sentence is appropriate.

## Conclusion

Garcia-Gomez has not established that the trial court abused its discretion in its consideration of his proposed mitigators or that his three-year sentence is inappropriate. We affirm.

Affirmed.

BAKER, J., and RILEY, J., concur.